69481. MILLER & MEIER & ASSOCIATES et al.
v. DIEDRICH et al.
(329 SE2d 918)

BEASLEY, Judge.

Plaintiff appeals from the trial court's grant of defendants' motion for directed verdict on plaintiff's claim and judgment entered thereon. It does not appeal from the jury's verdict and court's judgment for defendant Diedrich on his counterclaim.

Initially there were three defendants. At the close of plaintiff's case, they moved for directed verdict on numerous bases and, after extended argument, the court reserved ruling. The motion was renewed at the close of all the evidence. It was then granted as to one of the corporate defendants because it came into existence after all of the alleged tortious acts; as to the others, ruling was reserved until after the verdict.

A verdict form was submitted by the court to the jury, and a verdict was returned in favor of plaintiff on its claim, in the amount of $130,000 nominal damages, no special damages, and no punitive damages. After some discussion by the court and counsel, the court reinstructed the jury with respect to the meaning of, and distinction between, special and nominal damages. After further deliberation, the jury asked for definitions of these plus a charge on another subject. The court reinstructed and sent two written questions regarding the verdict, as to the *type* of damages (if the verdict was to be for plaintiff) and the *amount* of the verdict. The same verdict was returned and, after polling, the jury was discharged.[1]

Several days later the court granted the motion for directed ver-

---

[1] The foreman asked if he could elaborate on the verdict, which was denied.

dict, giving its reasons, and entered judgment for defendants. *Held*:

1. When a motion for directed verdict is reserved and ruled on after the verdict, it is treated as a judgment notwithstanding the verdict. "The purpose of CPA § 50 (b), allowing the trial judge to submit the case to the jury and then granting a judgment notwithstanding the verdict, is to avoid the necessity for a retrial if the appellate court determines that the trial court erred in granting the judgment notwithstanding the verdict, . . ." *Mayor &c. of Savannah v. Palmerio*, 242 Ga. 419, 422 (249 SE2d 224) (1978).

Thus, when a motion for directed verdict is considered after the verdict, its scope and effect is the same but it generally has the additional attribute of avoiding a new trial in the event it is held to be erroneous.

Consequently, "the primary question for determination is whether the evidence introduced, with all reasonable deductions therefrom demanded a verdict for the defendant, as the standards for granting a motion for judgment n.o.v. are the same as those governing direction of a verdict. [Cits.] [T]he motion for judgment n.o.v. may be granted only when, without weighing the credibility of the evidence, there can be but one reasonable conclusion as to the proper judgment. Where there is conflicting evidence, or there is insufficient evidence to make a 'one-way' verdict proper, judgment n.o.v. should not be awarded. In considering the motion, the court must view the evidence in the light most favorable to the party who secured the jury verdict. And this approach governs the actions of appellate courts as well as trial courts." *Bryant v. Colvin*, 160 Ga. App. 442, 444 (287 SE2d 238) (1981). " 'While it is erroneous for a court to direct a verdict in favor of a particular party to the cause where there is an issue of fact, when the proved facts, viewed from every possible legal point raised by the evidence, would sustain no finding other than the one directed, i.e., where there is no issue of fact, then it is error to refuse to direct an appropriate verdict. [Cits.] Further, in giving consideration to a motion for judgment notwithstanding the verdict, the court is concerned substantially with the same principles of law as are applicable upon consideration of the motion for directed verdict. The question for determination is whether or not the evidence demands a verdict for movant [cits.], and if there is no evidence to support the verdict returned, denial of the motion is error.' " *City of Atlanta v. West*, 160 Ga. App. 609 (2) (287 SE2d 558) (1981). "The standard for granting a directed verdict or a judgment notwithstanding the verdict are the same." *Pendley v. Pendley*, 251 Ga. 30 (302 SE2d 554) (1983).

The court gave a number of bases for its judgment, each of which we will treat because when the judgment of the trial court is proper and legal for any reason, it should be affirmed even though there may possibly be an erroneous reason for that judgment. *Argonaut Ins. Co.*

*v. Cline*, 138 Ga. App. 778, 782 (4) (227 SE2d 405) (1976).

2. One of the grounds for the grant of judgment notwithstanding the verdict was that OCGA § 14-2-153 does not apply to the Georgia directors of foreign corporations, such as plaintiff, even though it has procured a certificate of authority to transact business in this state from the Secretary of State pursuant to OCGA § 14-2-310. Plaintiff has operated in Georgia under such a certificate since 1974.

The Georgia Business Corporation Code (OCGA § 14-2-1 et seq.) was enacted in 1968. Ga. L. 1968, p. 565. The Act, in OCGA § 14-2-2, included definitions of certain words used throughout the Corporation Code: "(5) 'Corporation' or 'domestic corporation' means a corporation for profit subject to this chapter, except a foreign corporation . . . (7) 'Foreign corporation' means a corporation for profit organized under laws other than the laws of this state for a purpose or purposes for which a corporation may be organized under the laws of this state." There is no separate definition for a foreign corporation which has obtained a certificate of authority.

OCGA § 14-2-153 (a) (1) (C), which is invoked by plaintiff as the basis of its complaint against Diedrich individually as its director for the appropriation of its business opportunities, is available as a cause of action to "persons named in subsection (b) of this Code section." That subsection allows the action to be brought "by the corporation" (of which the defendant is a director), among others.

The question here is whether plaintiff had a statutory right to bring the action. Although the definition of "corporation" excludes "foreign corporations," it does not expressly exclude foreign corporations authorized by certificate to transact business in Georgia. Nor does the definition of "foreign corporations" expressly include those which are certificated.

The answer appears in OCGA § 14-2-311, setting out the powers and duties of corporations in plaintiff's class: "A foreign corporation which shall have received a certificate of authority under this chapter shall, until a certificate of revocation or of withdrawal shall have been issued as provided in this chapter, enjoy the same but no greater, rights and privileges as a domestic corporation organized for the purposes set forth in the application pursuant to which such certificate of authority is issued and, except as otherwise provided in this chapter, shall be subject to the same duties, restrictions, penalties, and liabilities now or hereafter imposed upon a domestic corporation of like character." (Code 1933, § 22-1402, enacted by Ga. L. 1968, p. 565, § 1.)

Thus, the right to insist that its Georgia directors abide by the same statutory standards of conduct as are required of directors of Georgia corporations, and the right to enforce such standards by legal action, is given to certificated corporations. The state gives authority,

of which the certificate is evidence, for that foreign corporation to transact business here. It must do so, however, under our laws, and is treated as a domestic corporation (with explicit exceptions) with respect to its legal duties, restrictions, penalties, and liabilities. By the same token, and on the other side of that coin, it is then entitled to the same rights and privileges as a domestic corporation.

Since the law gives to domestic corporations legal recourse when a director appropriates its business opportunities, that same right is available to the authorized foreign corporations who seek to "enjoy," in the word of the Code, our law's protection. Legal authority to bring an action is a "right." *Bryant v. Randall*, 244 Ga. 676 (261 SE2d 400) (1979). The law as written would require the same standards of conduct of Georgia directors, whether the corporation they serve is one created in Georgia or one which has been formally and officially authorized to transact business here. As said in the Comment following OCGA § 14-2-311, this places "qualified foreign corporations on a par with domestic corporations," except as otherwise provided.

This is in keeping with the decision in *Southeast Consultants, Inc. v. McCrary Engineering Corp.*, 246 Ga. 503 (273 SE2d 112) (1980). Although it did not deal with the issue here raised, the case involved an authorized foreign corporation's resort to the business opportunities Code section, and the Court did not preclude its use.[2]

Since we hold that the Code right of action is available to plaintiff, we need not address whether there would be a common law right of action if the Code door was closed. Nor is there a conflicts of law question involved.[3]

3. We must continue the review because there may be another, valid basis for the judgment. A second ground was that $130,000 in nominal damages was "an illegal verdict on its face." We take this to mean that the court viewed the verdict as excessive. Of course, if an award by a jury is "palpably unreasonable or excessive, or the product of bias," it will be set aside. *Ford Motor Co. v. Stubblefield*, 171 Ga.

---

[2] This comports as well with the general view: "A foreign corporation is . . . entitled to the benefit of statutory or extraordinary remedies obtaining in the state where the suit is brought, unless there is something in the statute to exclude it . . . . But a foreign corporation doing business in the state will be held subject to the same limitation in taking advantage of a statutory remedy as is imposed upon a resident of the state." Fletcher Cyc. Corp., § 8607 (Perm. ed.)

[3] For discussions of the liabilities of corporate directors and officers in Georgia, see Baker, "Liability of Corporate Directors and Officers [and Shareholders] Under the Georgia Business Corporation Code," 7 *Georgia State Bar Journal* 277 (Feb. 1971); Meeks and Jensen, "Usurpation of Corporate Opportunities: Liabilities of the Former Officer or Director," 18 *Georgia State Bar Journal* 150 (May 1982); Centner, "Georgia Business and Nonprofit Corporations — Directors' Duties of Loyalty and Care," 19 *Georgia State Bar Journal* 164 (May 1983); Note, "Southeast Consultants, Inc. v. McCrary Engineering Corp.: Georgia Opens the Door to Corporate Opportunity," 33 *Mercer L.R.* 407 (1981).

App. 331, 341 (319 SE2d 470) (1984); *Thompson Enterprises v. Coskrey*, 168 Ga. App. 181 (3) (308 SE2d 399) (1983). However, this is not a ground for a directed verdict. Nor can it be, because entitlement to a directed verdict would of necessity have to be established by what occurred *prior* to verdict. When a case is submitted to a jury before the motion is ruled on, it is submitted "subject to a later determination of the legal questions raised by the motion." OCGA § 9-11-50 (b). The verdict, whatever it is when such a motion is reserved until after verdict, is irrelevant to consideration of the motion. Of course, the verdict may result in making the motion moot, if the movant wins the verdict. Or it may have the salutary and eminently useful effect of avoiding a new trial if the judgment notwithstanding the verdict is reversed. But its form or substance cannot be complained about in a motion for a directed verdict.

Instead, a motion for new trial would be the proper means of attack. OCGA § 5-5-40 (a) provides: "All motions for new trial, except in extraordinary cases, shall be made within 30 days of the entry of the judgment on the verdict. . . ."

But neither of the parties moved in this direction. The plaintiff, it seems, hoped that the verdict would stand even though a rather large amount for nominal damages was awarded. In fact, it argues on appeal that the damages were really intended to be special damages and should be so construed. It is true that OCGA § 9-12-4 provides: "[v]erdicts shall have a reasonable intendment and shall receive a reasonable construction. They shall not be avoided unless from necessity." "It is a cardinal rule, in the construction of verdicts, that every reasonable presumption sustaining their validity shall be indulged . . . ." *Atlantic Coast Line R. Co. v. Stephens*, 14 Ga. App. 173, 176 (80 SE 516). (1913).

However, it is abundantly clear from the record, including the jury instructions and the verdict form and answers to the court's written questions, that nominal damages were intended. There is simply no room for construction otherwise. Cf. *West Ga. Pulpwood v. Stephens*, 128 Ga. App. 864, 870 (198 SE2d 420) (1973); *Pepsi-Cola Bottling Co. of Dothan v. First Nat. Bank of Columbus*, 248 Ga. 114 (1) (281 SE2d 579) (1981). This is not a situation of an ambiguous verdict. See *Haughton v. Judsen*, 116 Ga. App. 308, 310 (157 SE2d 297) (1967). It is, instead, a request for what amounts to a substantive change in the verdict, because the nature and character of the two types of damages are fundamentally different and distinguishably based,[4] and a substantive change could not be made by the court.

---

[4] For discussion of the development of nominal damages law in Georgia, see *Bradley v. Godwin*, 152 Ga. App. 782 (264 SE2d 262) (1979).

*Walter E. Heller & Co. v. Aetna Business &c.*, 151 Ga. App. 898 (8) (262 SE2d 151) (1979).

If plaintiff believed the jury meant to award special damages, it would have to obtain this correction to its satisfaction before the jury was discharged. See *Suber v. Fountain*, 151 Ga. App. 283, 291 (259 SE2d 685) (1979). OCGA § 9-12-9 requires a judgment to conform to the verdict. Therefore, the law allows the jury all reasonable opportunity to discover and declare the truth according to the judgment. See *Firestone Tire &c. Co. v. Pinyan*, 155 Ga. App. 343, 351 (7) (270 SE2d 883) (1980).

Defendants, on the other hand, apparently declined to seek a correction because they believed, as they argue on appeal, that the nominal damages were excessive. Whether they were or not is not properly before this court, because this defect, if it was such as a matter of law, would not be a basis for granting a directed verdict or a judgment notwithstanding the verdict. The remedy for defendants would be a motion for new trial. OCGA § 5-5-40. *King v. Loeb*, 93 Ga. App. 301, 304 (91 SE2d 532) (1956); *Bradley v. Godwin*, 152 Ga. App. 782, 786 (264 SE2d 262) (1979); *Avery v. K. I., Ltd.*, 158 Ga. App. 640, 642 (281 SE2d 366) (1981).[5] Where nominal damages are excessive, a defendant may not deprive a plaintiff of the verdict in his favor.[6] A plaintiff's right to recover nominal damages depends only upon whether defendant's "liability [has] been established." *Avery v. K. I., Ltd.*, supra at 641. A plaintiff may recover nominal damages not only where his actual damages are minute, but also where he has not proved his actual damages by a preponderance of the evidence to the satisfaction of the jury. " '[A] recovery may be classified as coming under the definition of nominal damages where the violation of a right is shown, substantial damages claimed, and some actual loss proved, and yet the damages are not susceptible of reasonable certainty of proof as to their extent.' " *First Fed. Savings &c. Assn. v. White*, 168 Ga. App. 516 (3) (309 SE2d 858) (1983). See also *Duckworth v. Collier*, 164 Ga. App. 139 (296 SE2d 640) (1982).

Thus, the trial court erred in granting judgment to defendants on

---

[5] Whether a new trial should be granted is not up to this court in the first instance, and the law provides that "[t]he first grant of a new trial shall not be disturbed by the appellate court unless the appellant shows that the judge abused his discretion in granting it and that the law and the facts require the verdict notwithstanding the judgment of the presiding judge." OCGA § 5-5-50. See *Hicks v. American Interstate Ins. Co.*, 158 Ga. App. 220, 225 (2) (279 SE2d 517) (1981).

[6] As to whether the nominal damages were excessive, which we do not decide, Georgia applies a test of relativity rather than limiting them to a trivial sum. They may vary almost indefinitely, according to circumstances. *First Fed. Savings &c. Assn. v. White*, infra; *Ponce de Leon Condominiums v. DiGirolamo*, 238 Ga. 188 (232 SE2d 62) (1977). In the latter case, the amount of nominal damages was "viewed in conjunction with the evidence of actual damage" in determining excessiveness.

this ground. *Avery v. K. I., Ltd.*, supra at 642. See also OCGA § 5-5-40 (h): "The court also shall be empowered to grant a new trial on its own motion within 30 days from entry of the judgment, . . ." The most it could have done was to order a new trial. *King v. Loeb*, supra. OCGA § 9-11-50 (b): "If a verdict was returned, the court may allow the judgment to stand or may reopen the judgment and either order a new trial or direct the entry of judgment as if the requested verdict had been directed." But a motion for new trial, which that Code section expressly allows to be filed with a motion for judgment notwithstanding the verdict, or new trial prayed for in the alternative to judgment notwithstanding the verdict, was not made.

Our opinion that the judgment notwithstanding the verdict could not be used to set aside the verdict for excessiveness of nominal damages, thus renders the judgment notwithstanding the verdict erroneous in this regard. Normally, "under these circumstances the appellate court then is in a position to simply reinstate the verdict." *Mayor &c. of Savannah v. Palmerio*, supra, 422. That will be the result of our reversal if we conclude there is "some evidence," which is what is required to support the jury's verdict. *Bryant v. Colvin*, supra. A new judgment will then have to be entered by the trial court on the verdict. Of course, it may thereafter grant a new trial upon motion or on its own motion. OCGA § 5-5-40.

In this connection, we point out a defect in the verdict which we cannot cure and which could not be reached by a motion for directed verdict or judgment notwithstanding the verdict. It was not a ground for the trial court's judgment, but the problem was apparently overlooked by the parties and the court and, if a new trial is granted, we caution against its recurrence. The verdict appears to be defective on its face because the claim for appropriating corporate business opportunity was against Diedrich alone, as a director of the plaintiff corporation. Only the latter two claims, unfair competition by trade name/trade-mark infringement and unfair competition by hiring of all plaintiff's Atlanta office employees, were against both Diedrich and MWD. Neither the jury instructions nor the form verdict nor the written questions guided the jury to return separate verdicts as to the several causes of action, which was critical because all was not claimed against all.

Following the court's directions, the jury's verdict was against "the defendants," and there is no way to determine whether it was thereby finding for Diedrich on the director claim (which would be authorized) or whether it was finding against both defendants on that claim (which would not be authorized). If it was finding against Diedrich on that claim and against both defendants on the unfair competition claims (which would be authorized), there is a total absence of a designation of what portion of the verdict award is to be charged

against Diedrich for appropriation as well as unfair competition (if he was found liable for both) and what portion against the corporation for unfair competition. The latter entity, of course, would not be liable in any amount for the tortious act of the director of another corporation. Since the verdict did not distinguish, no valid judgment could be entered thereon, and must be set aside. See *Four Oaks Homes v. Smith*, 153 Ga. App. 326, 328 (265 SE2d 76) (1980), quoting from *Fleming v. Collins*, 190 Ga. 210, 214 (9 SE2d 157) (1940): "A verdict that is contradictory and repugnant is void, and no valid judgment can be entered thereon. A judgment entered on such a verdict will be set aside." While in *Four Oaks* the verdict was contradictory, here it was repugnant in the sense that it was irreconcilable and incompatible with the pleadings and claims presented to the jury.

4. Another ground for the court's grant of directed verdict and judgment was that the evidence did not warrant punitive damages being submitted to the jury. Such a matter would properly come within the scope of a motion for directed verdict and allow the court to eliminate punitive damages. *Quattlebaum v. Ga. Power Co.*, 165 Ga. App. 510 (310 SE2d 677) (1983). However, here the jury did not award punitive damages so the subject became moot and would not warrant a reversal of a verdict which did not bear within it an award of punitive damages bereft of evidence. *Ballenger Corp. v. Dresco &c. Contractors*, 156 Ga. App. 425 (7) (274 SE2d 786) (1980).

5. In another ground, the court concluded that Georgia does not recognize a common law right against trade-mark infringement and that defendant was therefore entitled to judgment on that ground. Although the order recited only the word "trade-mark," it is clear that the court embraced in its ruling also the claim as to trade name. Plaintiff claimed that defendants used its name and logo without authority and therefore infringed on plaintiff's rights to sole use thereof, and that this constituted unfair competition.

Protection of a trade name has been given in Georgia. When a case is made as to its infringement, its continued use may be enjoined. *Womble v. Parker*, 208 Ga. 378 (67 SE2d 133) (1951): "A person, by long and exclusive use, may acquire a trade name; and when thus acquired, such trade name is as much descriptive of the manufacturer or producer as is his own name, and the infringement of such trade name of an individual will be enjoined by a court of equity when a proper case is made. If the person first appropriating and using the name has a clear right to its use, its subsequent use by another, knowing of the right, is presumed by law to be fraudulent. [Cit.]" Id. at 379. See also *Pearl Optical, Inc. v. Pearle Optical of Ga.*, 218 Ga. 701 (130 SE2d 223) (1963); *Atlanta Paper Co. v. Jacksonville Paper Co.*, 184 Ga. 205 (190 SE 777) (1937); *Kay Jewelry Co. v. Kapiloff*, 204 Ga. 209 (49 SE2d 19) (1948); *Gordy v. Dunwody*, 209

Ga. 627 (74 SE2d 886) (1953). It was expressly recognized in some of these cases as a form of unfair competition. OCGA § 23-2-55 provides: "Any attempt to encroach upon the business of a trader or other person by the use of similar trade-marks, names or devices, with the intention of deceiving and misleading the public, is a fraud for which equity will grant relief."

While the cases cited involve the seeking of equitable relief to stop use, here plaintiff is seeking damages for use before it was stopped. Since Georgia has long recognized the right and provided a remedy to halt continued use, we see no reason for depriving a claimant in a proper case of the right to seek recovery for damage already sustained. As stated in the *Atlanta Paper Co.* case, supra at 211, " 'Every man has the right to use his own name reasonably and honestly in every way whether in a firm or corporation.' "

As to the use of the "logo," if what is meant is a trade-mark or service mark, actions are limited to infringements of *registered* marks. OCGA §§ 10-1-450 and 10-1-451. There was no evidence that the trade-mark was registered.[7] Consequently, the court below was correct as to this question of law, as it related to trade-mark.

6. The last grounds to be considered are those which found deficiencies in the evidence which plaintiff was required to produce to establish a prima facie case on each claim.

First let us consider the issue of special damages. The court found the evidence lacking, as to each count, in this regard. We need not address the merits of this for two reasons. One, the jury did not award special damages, so there is nothing to uphold or set aside in this regard. Two, even if there was insufficient evidence of special damages, the defendants would not have been entitled to judgment. As discussed earlier, nominal damages would have been awardable so long as there is some proof of duty, breach, proximate cause, and "some actual loss" even if the damages are small or "not susceptible of reasonable certainty of proof as to their extent." *Ponce de Leon v. DiGirolamo*, supra at 190. Even if there has been "no actual damage, the plaintiff can recover nominal damages which will carry the costs." *Bradley v. Godwin*, supra at 784.

Next we reach whether plaintiff made out a prima facie case on any of the claims, as the trial court found that it did not, in certain particulars. In reviewing the grant of judgment notwithstanding the verdict we must view the evidence in the light most favorable to the party who secured the verdict and determine whether the evidence demanded the judgment notwithstanding the verdict or whether there was some evidence to support the jury's verdict; if there is conflicting

---

[7] Plaintiff did not bring this count under OCGA §§ 10-1-372 or 10-1-373.

evidence, a judgment for the opposite party is erroneous. *Bryant v. Colvin*, supra; *Pendley v. Pendley*, supra.

On each of the subjects concerning which the trial court found omissions, the evidence was in dispute. Much of it involved the credibility of the witnesses and the context in which actions were taken and language used. Much involved intent of the parties throughout the period of time the allegedly tortious acts occurred, when the relationship of the parties was itself in dispute and a gradual metamorphosis was occurring. We find that, in those instances in which the court below found no evidence, there was some. The matter thus rested with the jury.

*Judgment reversed. Birdsong, P. J., and Carley, J., concur.*

DECIDED MARCH 15, 1985 —
REHEARING DENIED MARCH 28, 1985 — 

*Randolph A. Mayer, Michael T. Nations*, for appellants.
*Howell Hollis III, T. Ryan Mock, Jr.*, for appellees.