A90A0834. FAMIGLIETTI et al. v. BREVARD MEDICAL INVESTORS, LTD. et al.

(397 SE2d 720)

BEASLEY, Judge.

Brevard Medical Investors, Ltd., was formed by Stiles A. Kellett, Jr., and Samuel B. Kellett to build and own a nursing home in Brevard County, Florida (referred to collectively as "Brevard"). It was to be operated by Convalescent Services, Inc., a Georgia corporation owned by the Kelletts. Richard Famiglietti and Federated Health Corporation sued Brevard for breach of two contracts to purchase real estate and for fraudulent misrepresentations made in connection with an amendment to one of the contracts. The jury rendered a verdict for $1,027,170: $500,000 for fraud, $295,000 for breach of contract, $54,202 prejudgment interest, $77,968 attorney fees, and $100,000 punitive damages. Famiglietti and Federated appeal the grant of Brevard's motion for a judgment notwithstanding the verdict and a conditional new trial.

1. " '[T]he primary question for determination is whether the evidence introduced, with all reasonable deductions . . . demanded a verdict for the defendant, as the standards for granting a motion for judgment n.o.v. are the same as those governing direction of a verdict. (Cits.) (T)he motion for judgment n.o.v. may be granted only when, without weighing the credibility of the evidence, there can be but one reasonable conclusion as to the proper judgment. Where there is conflicting evidence, or there is insufficient evidence to make a "one-way" verdict proper, judgment n.o.v. should not be awarded. In considering the motion, the court must view the evidence in the light most favorable to the party who secured the jury verdict. And this approach governs the actions of appellate courts as well as trial courts.' *Bryant v. Colvin,* 160 Ga. App. 442, 444 (287 SE2d 238) (1981)." *Miller & Meier & Assoc. v. Diedrich,* 174 Ga. App. 249, 250 (329 SE2d 918) (1985). The question is whether the evidence demands a verdict for the movant; if there is no evidence to support the verdict, the motion must be granted. *City of Atlanta v. West,* 160 Ga. App. 609, 611 (2) (287 SE2d 558) (1981).

The evidence showed that Brevard filed an application for a certificate of need ("CON") to obtain permission from the State of Florida to build a nursing home in July 1984. It was updated on May 2, 1986. Appellants and other parties filed competing applications. In

May 1986, Famiglietti met with a representative of Convalescent Services, and it was subsequently agreed that Brevard would purchase a certain parcel of land from appellants provided it was properly zoned and could be developed as a nursing home without incurring any unusual costs. It was further agreed that appellants would withdraw their CON application. This agreement was expressed in two documents: a contract to purchase a certain parcel of real estate for $550,000, less certain credits for development and utilities, and provided certain warranties; and an agreement that appellants would withdraw their CON application. On July 16, 1986, the appellants withdrew their CON application.

The day after a CON was granted to Brevard, two of Brevard's representatives traveled to Florida and met with a real estate broker who showed them alternative sites for the construction of a nursing home. Appellants were never notified that Brevard was considering another site, and the real estate broker was not informed of the existing contract on appellant's property. Brevard purchased one of the sites viewed on this trip after it terminated its contracts with appellants and constructed a nursing home on it.

On September 10, 1986, four days before the scheduled closing date for the land purchase, and one week after the issuance of the CON and the trip to inspect other sites, Brevard requested, and appellants executed, an amendment to the purchase agreement granting an extension of time on the original contract. This extension moved the closing date past the date the grant of the CON could be appealed. At the time the extension was granted, Brevard knew of a potential problem with the placement of a retention pond on the property and the condition of the soil, but it did not inform appellants of these problems. There were conflicting reports as to whether building costs would be increased because of the soil conditions.

When appellants inquired as to the reason for the requested extension, Brevard's representative stated that they were having some problems concerning the dedication of a private road and the installation of a sewer lift station and needed "a little bit more information on that" because it was necessary for the financing. A telephone call from Brevard followed by a termination letter received by appellants approximately 13 days before the extension was due to expire, was appellants' first indication that there were any problems with the project. The two reasons previously mentioned for the grant of the extension had been resolved. When appellants asked for an opportunity to work out the newly alleged problems, Brevard's spokesman stated that they needed to cancel this contract and go on to other things.

The jury was charged on the five elements of fraud as found in OCGA § 51-6-2 (a), as well as fraud as to future statements made with no present intention to perform, the subtle nature of fraud and

all its ramifications, and its authorization to find fraud when certain factors weigh in favor of it.

The evidence authorized the jury to find that appellees' agent made misrepresentations as to the reason an extension was sought for closing the purchase agreement, and the jury could have found that the search for a new site immediately after signing the contracts was indicative of appellees' intent not to perform under the contract once the CON was awarded. See *Insilco Corp. v. FNB*, 156 Ga. App. 382 (274 SE2d 767) (1980). Under OCGA § 51-6-2 (a), a "willful misrepresentation of a material fact, made to induce another to act, upon which such a person acts to his injury, will give him a right of action." See *Preiser v. Jim Letts Oldsmobile*, 160 Ga. App. 658, 660 (288 SE2d 219) (1981). The materiality of the misrepresentations is a jury question. *King v. Towns*, 102 Ga. App. 895 (118 SE2d 121) (1960). Whether a party exercised due diligence to ascertain the truth is also for jury resolution. *King v. Towns*, supra. The jury heard the evidence over the course of a week, was charged all the applicable legal principles, and apparently fully understood the subtle nature of fraud.

We cannot say that there was no evidence to support a finding of fraud. The trial court erred in granting the motion for a j.n.o.v. as to this issue.

2. The jury verdict should stand with regard to the awards for breach of the purchase agreement, unless the grant of new trial properly supervenes. The sole basis urged for discarding the verdict is not whether a breach was proved but rather that there was no evidence of damages, in one particular aspect thereof, pursuant to the legal measure. What is perceived is a lack of any competent evidence of the fair market value of the land on the date of the breach. But the evidentiary question does not control.

OCGA § 9-11-50 (b) allows the device of a motion for judgment notwithstanding the verdict to be used when a motion for directed verdict does not end a trial and it proceeds to verdict. It is narrow, however, and does not permit reopening the case for new legal issues which are thought of retrospectively, with hindsight. It provides, however, a post-verdict opportunity for a "determination of the legal questions raised by the motion [for a directed verdict]." If upon reflection the trial judge determines that the motion for directed verdict was valid, the judge is to set aside the verdict and the original judgment and enter a new judgment "in accordance with [the] motion for directed verdict."

It is patent, then, that the j.n.o.v. must be based on grounds raised in the motion for directed verdict initially, for it is in effect only a new ruling on a renewed motion. This Court has repeatedly recognized this. In *Nationwide Mut. Fire Ins. Co. v. Rhee*, 160 Ga. App. 468, 469 (1) (287 SE2d 257) (1981), the Court pointed out that

j.n.o.v. "may be entertained only if the movant . . . is seeking to have judgment entered 'in accordance with' [the] motion [for directed verdict]." It was held that the trial court's ruling on the motion on a new ground "was without authority." Id. at 470. See also *AAA Delivery Serv. v. Morse Electro Prods. Corp.*, 140 Ga. App. 502 (1) (231 SE2d 362) (1976). We recently reaffirmed this long-standing procedural rule in *Brantley Co. v. Simmons*, 196 Ga. App. 233 (395 SE2d 656) (1990).

Grounds asserted in a motion for j.n.o.v. but not in the motion for directed verdict are not considered on appeal either. *Wehunt v. ITT Business Communications Corp.*, 183 Ga. App. 560 (1) (359 SE2d 383) (1987); *Glenridge Unit Owners Assn. v. Felton*, 183 Ga. App. 858 (2) (360 SE2d 418) (1987); *Fidelity &c. Ins. Co. v. Massey*, 162 Ga. App. 249, 250 (291 SE2d 97) (1982). The point is that a motion for j.n.o.v. is simply a reasserted motion for directed verdict, with a second opportunity for the trial court to rule on it before time and expenses are incurred and appellate judicial resources are expended. It is an instrument designed to "reduce court costs and delay," to use an ever sought-after objective. As the Supreme Court described it in *Mayor &c. of Savannah v. Palmerio*, 242 Ga. 419, 421 (1) (249 SE2d 224) (1978): "CPA § 50 (b) . . . allows the trial court to defer ruling on a motion for directed verdict and submit the case to the jury subject to a later determination of the legal questions raised by the motion." Additionally, its availability in the wings allows the jury trial to proceed to conclusion without having to start all over again if the trial judge is incorrect in granting the motion for directed verdict in the first place. Of course, if the verdict is for the movant, the motion becomes moot. See *Mayor &c. of Savannah*, supra at 422.

Here, the ground was raised by way of a motion to strike the testimony of Famiglietti and Dr. Scott, after the court had rejected each of the grounds of the motion for directed verdict. A motion to strike is not a precursor to a j.n.o.v. motion, and no authority has been unearthed by appellees or the Court to support the proposition that a trial court would be authorized to consider the grounds of a motion to strike evidence when ruling on a j.n.o.v. motion. Motions to strike evidence and motions for directed verdict are quite different. Moreover, the court may not excise some of the evidence admitted and then rule on the j.n.o.v. motion viewed with that evidence absent. *Bullard v. Carreras*, 183 Ga. App. 539, 542 (3) (a) (359 SE2d 429) (1987).

Defendants did not move for directed verdict on the breach of contract claim in any regard except as to attorney fees, much less on the specific ground of lack of foundation for Famiglietti's opinion evidence of value. As a matter of fact, in asserting their grounds for partial directed verdict, defendants stated their position after plaintiff's case in chief, with respect to what was to go to the jury: "This is a

breach of contract case involving two contracts, and the issues that the jury needs to determine is (sic) whether or not the defendants breached the contract or cancelled it in accordance with its terms; and if they breached, what are the damages." Evidently defendants acknowledged that there was evidence of damages for breach of contract even without Famiglietti's opinion of the value of the property at the time of the breach; otherwise they would have made this a ground for directed verdict on the contract claim. At the close of their evidence, defendants renewed the motion for directed verdict on the same grounds as their original motion and reiterated: "We got (sic) a breach of contract case, and there's no fraud . . . I don't think [there is] anybody in here who thinks this is anything other than a breach of contract action."

Defendants never urged, until the motion for j.n.o.v., that there was no evidence of value to support the damage element of the contract claim so as to remove that claim from jury consideration; they simply asked that some of that evidence be stricken. Thus the trial court was not authorized to widen its reconsideration of the motion for directed verdict at j.n.o.v. time. Had defendants wished to preserve the issue for j.n.o.v., they could easily have incorporated it into the motion for directed verdict which they argued at some length.

To stretch the limits of j.n.o.v. in this case would be particularly unjust, in that plaintiffs were precluded from giving additional evidence of value in rebuttal. They sought to enter explanatory testimony from Famiglietti and also from the broker who had sold the property to him and had made a per-acre appraisal on April 16, based on comparables as well as other factors. That appraisal was just six months before the breach. If the motion for directed verdict had included the subject ground, plaintiffs could have asked to reopen their case and submitted this evidence at that time. See *Able-Craft, Inc. v. Bradshaw*, 167 Ga. App. 725, 726 (1) (307 SE2d 671) (1983).

3. As the jury was charged on the various aspects of fraud and the evidence supports the jury verdict, and the jury was charged on punitive damages, that portion of the jury verdict awarding punitive damages was improperly struck by the court in granting a j.n.o.v.

4. The jury was charged that the contracts contained provisions for attorney fees and that they could also be recovered for fraud. Appellees did not appeal from the charge as given. Attorney fees may be awarded for fraud and deceit under OCGA § 13-6-11 (formerly Code Ann. § 20-1404). *Roberts Pest Control v. McDonald*, 132 Ga. App. 257, 260 (208 SE2d 13) (1974). This portion of the jury verdict was also improperly reversed by the grant of a j.n.o.v.

5. As to the grant of a new trial for defendants, final appellate disposition is premature. OCGA § 9-11-50 (c) requires the j.n.o.v.-granting trial court to "specify the grounds for granting or denying

the motion for new trial." OCGA § 5-5-51 requires the trial court which grants a new trial in its discretion to "set forth by written order the reason or reasons for the exercise of [its] discretion."

Neither the order conditionally denying a new trial to plaintiffs in the event the j.n.o.v. is affirmed, nor the order conditionally granting a new trial to defendants in the event the j.n.o.v. is reversed, reveals the grounds or reasons for the rulings. Thus we are in no position to examine whether they are reversible. "While ordinarily the first grant of a new trial will not be disturbed by this court, where . . . the first grant of a new trial is based on a special ground involving a question of law, the trial court's order is reviewable on appeal." *Cobb County Kennestone Hosp. Auth. v. Crumbley,* 179 Ga. App. 896, 897 (348 SE2d 49) (1986).

These statutory mandates seek to avert repeated trips to the same court, but when they are not complied with there is no waiver of the question, as there is when the trial court's order is deficient under OCGA § 9-11-52 (c). Consequently, remand with direction is in order. Cf. *Sigmon v. Womack,* 158 Ga. App. 47, 51 (2) (279 SE2d 254) (1981). Compare also *Smith v. Telecable of Columbus,* 238 Ga. 559 (234 SE2d 24) (1977). Of course, it must be kept in mind that both decisions precede the enactment of OCGA § 5-5-51 in 1985.

*Judgment reversed and case remanded with direction. Deen, P. J., and Pope, J., concur.*

DECIDED SEPTEMBER 19, 1990 —
REHEARING DENIED OCTOBER 5, 1990 —

*Alston & Bird, Oscar N. Persons, Jennifer A. Brown,* for appellants.

*Schreeder, Wheeler & Flint, David Flint, Susan H. Sarch,* for appellees.