## A02A0938. LINCOLN et al. v. TYLER et al.

(574 SE2d 440)

MIKELL, Judge.

This is the third appearance of this case in the appellate courts of Georgia. The underlying action arose when Doyster Tyler and his wife sued Steve Lincoln and Lincoln Realty (the "developers"), the developers of a subdivision adjacent to the Tylers' property, alleging that the development of the subdivision resulted in the discharge of excessive storm water and sediment onto the Tylers' property. In *Tyler v. Lincoln*[1] ("*Tyler I*"), which fully recites the facts of the case, we reversed the trial court's grant of summary judgment to the developers on the Tylers' nuisance, trespass, and negligence claims and affirmed the grant of summary judgment on their claims for punitive damages and attorney fees. The Supreme Court reversed our decision as to punitive damages and attorney fees in *Tyler v. Lincoln*[2] ("*Tyler II*"), finding that because "a trespass is an intentional act[,] . . . a wilful repetition of a trespass will authorize a claim for punitive damages."[3]

The Tylers proceeded to trial on their trespass, nuisance, and negligence claims and sought punitive damages and attorney fees. The jury, utilizing a special verdict form, rendered a verdict in favor of the Tylers on their trespass and nuisance claims, awarding them $43,000 in special damages. However, the jury found in favor of the developers on the Tylers' negligence and punitive damages claims. Finally, the jury awarded the Tylers $90,000 in attorney fees and expenses of litigation. The developers moved to strike the award of fees and expenses, but the trial court denied the motion after an evi-

---

[1] 236 Ga. App. 850 (513 SE2d 6) (1999).
[2] 272 Ga. 118 (527 SE2d 180) (2000).
[3] (Citations omitted.) Id. at 120 (1).

dentiary hearing. The developers then filed a motion for new trial, or in the alternative, for judgment notwithstanding the verdict on that issue, which the trial court also denied. The developers appeal from that order, arguing the following: (1) that the award of attorney fees should have been stricken as the jury found that the developers did not act in bad faith; (2) that a new trial or j.n.o.v. is necessary because the evidence upon which the attorney fees award is based did not allocate between the Tylers' successful and unsuccessful claims; and (3) that a j.n.o.v. is required because the legal bill upon which the award of attorney fees was based contains inadmissible hearsay. For the reasons stated below, we affirm.

The standard of review for each of the developers' enumerated errors is the same.

> Where a jury returns a verdict and it has the approval of the trial judge, the same must be affirmed on appeal if there is any evidence to support it as the jurors are the sole and exclusive judges of the weight and credit given the evidence. The appellate court must construe the evidence with every inference and presumption in favor of upholding the verdict, and after judgment, the evidence must be construed to uphold the verdict even where the evidence is in conflict. As long as there is some evidence to support the verdict, the denial of defendant's motion for directed verdict, new trial and j.n.o.v. will not be disturbed.[4]

1. In their first claim of error, the developers argue that the award of attorney fees should have been stricken because the jury did not find that the developers acted in bad faith. In so arguing, the developers rely on the special verdict form, which states in Section E: "Defendants have acted in bad faith, have been stubbornly litigious, or have caused plaintiffs unnecessary trouble and expense." The jury circled "trouble and expense" and checked "yes" under the statement. The developers contend that the markings on the verdict form prove that the jury did not find that they acted in bad faith, which is essential to an award of attorney fees under OCGA § 13-6-11 where a bona fide controversy exists.[5]

"The maxim, 'utile per inutile non vitiatur,' saves verdicts from the taint of any ambiguity or uncertainty brought about by rejectable surplusage."[6] The verdict form in this case did not ask the jury to

---

[4] (Citation and punctuation omitted.) *Southeastern Security Ins. Co. v. Hotle*, 222 Ga. App. 161, 162 (1) (473 SE2d 256) (1996).

[5] See *Latham v. Faulk*, 265 Ga. 107, 108 (2) (454 SE2d 136) (1995).

[6] (Citation and punctuation omitted.) *Fraser v. Jarrett*, 153 Ga. 441, 454 (112 SE 487) (1922).

specify by circling or otherwise marking the basis for each of its findings. Thus, we will not presume that the additional markings on the verdict form reflect the basis of the jury's award of attorney fees. "[A] verdict may be reformed or remodeled in the presence of the jury before they have retired from the box."[7] The developers did not examine the verdict after it was rendered, nor did they ask any questions to attempt to clarify the jury's findings.

> [T]he method by which a jury reaches a particular verdict is not a matter of which this court can take judicial cognizance. If the defendants desired an explanation of the basis for the damage award, they should have objected to the verdict form, which allowed the jury free rein to set damages. Their failure to do so while the jury was still present and available to reform the verdict waived any objection.[8]

As the Supreme Court stated in *Tyler II*, "every intentional tort invokes a species of bad faith that entitles a person wronged to recover the expenses of litigation including attorney fees."[9] Here, the jury found that the developers committed a trespass, which is an intentional tort.[10] Moreover, the Supreme Court recognized in *Tyler II* that

> the Tylers presented evidence of excessive storm water runoff and sediment deposit, flooding of their property, and pollution of their ponds directly from development of the subdivision; that the developers had not taken adequate soil erosion control measures within the subdivision; that the subdivision drainage system was designed in a manner that would increase the runoff of storm water onto their property; and that they repeatedly asked the subdivision developers to correct the problems, but failed to get them to take any action to remedy the situation and the ongoing damage.[11]

Thus, there was evidence to support a finding of bad faith, warranting an award of attorney fees.

---

[7] (Citations and punctuation omitted.) *Ring v. Williams*, 192 Ga. App. 329, 331 (3) (384 SE2d 914) (1989).

[8] (Citations and punctuation omitted.) *Brock v. Douglas Kohoutek, L.P.*, 225 Ga. App. 104, 109 (3) (483 SE2d 342) (1997).

[9] (Citations and punctuation omitted.) Supra at 122 (2).

[10] *Tanner v. Gilleland*, 186 Ga. App. 377, 378 (3) (367 SE2d 257) (1988).

[11] Supra at 121 (1).

2. Next, the developers argue that the evidence upon which the jury's award of attorney fees was based did not allocate between the Tylers' successful and unsuccessful claims; therefore, a new trial or j.n.o.v. is necessary. In *CSX Transp. v. West*,[12] an action alleging continuing nuisance and trespass, we held that

> [w]here there is some evidence supporting a finding of bad faith, an award of attorney fees on that basis must be affirmed. Further, . . . the award of attorney fees is not apportioned to only those attorney fees attributable to the claims on which the plaintiff prevailed. In our view, a party acting in bad faith should pay the full price for losing.[13]

Accordingly, this enumeration fails.

3. Finally, the developers contend that a j.n.o.v. is warranted because the legal bill upon which the attorney fees award is based contains inadmissible hearsay. The developers did not assert this argument in their original motion for directed verdict or in their renewed motion for directed verdict at the close of the evidence. The transcript shows that counsel for the developers informed the court that he anticipated making a motion for a directed verdict as to attorney fees on two grounds: (1) that the developers had not received the legal bill upon which the testimony would be based and thus had no basis for cross-examination; and (2) that the Tylers' counsel would have to show that he was competent to testify as an expert on the issue of attorney fees. In response, the Tylers' counsel produced the legal bill. The court overruled the objection as to counsel's competency to testify. After the close of the evidence, the developers renewed their motion for directed verdict as to punitive damages, bad faith, and attorney fees. However, they did not argue in any of their motions what they now assert on appeal, which is that portions of the legal bill constituted inadmissible hearsay.

In *Dee v. Sweet*,[14] we held that

> OCGA § 9-11-50 (b) allows the device of a motion for judgment notwithstanding the verdict to be used when a motion for directed verdict does not end a trial and it proceeds to verdict. It is narrow, however, and does not permit reopening the case for new legal issues which are thought of retrospectively, with hindsight. It provides, however, a post-verdict opportunity for a determination of the legal ques-

---

[12] 240 Ga. App. 209 (523 SE2d 63) (1999).
[13] (Citation and punctuation omitted.) Id. at 212 (3) (b).
[14] 218 Ga. App. 18 (460 SE2d 110) (1995).

tions raised by the motion for a directed verdict. . . . It is patent, then, that the j.n.o.v. must be based on grounds raised in the motion for directed verdict initially, for it is in effect only a new ruling on a renewed motion.[15]

In that case, the challenge to the sufficiency of the evidence offered to support an award of attorney fees was made on appeal, but not in the defendants' motion for directed verdict, wherein they argued instead that the award should fail because the fees were not allocated between successful and unsuccessful claims. We declined to consider evidence regarding the reasonableness of an attorney fees award because the appellants had not challenged the sufficiency of the evidence on directed verdict.[16]

Similarly, in *Famiglietti v. Brevard Med. Investors*,[17] we held that a trial court could not consider the grounds of a motion to strike evidence when ruling on a j.n.o.v. motion.[18] In that case, the defendants argued that the trial court erred in denying their motion for j.n.o.v. because there was no evidence to support the damage element of the plaintiffs' breach of contract claim.[19] However, they failed to raise that argument in their motion for directed verdict.[20] Rather, after their motion for directed verdict was denied, the defendants asked that some of the evidence be stricken.[21] We held that "[a] motion to strike is not a precursor to a j.n.o.v. motion, and no authority has been unearthed . . . to support the proposition that a trial court would be authorized to consider the grounds of a motion to strike evidence when ruling on a j.n.o.v. motion."[22]

In the case sub judice, the developers failed to argue in their motions for directed verdict that portions of the Tylers' legal bill contained inadmissible hearsay. Accordingly, the trial court did not err in denying the motion for j.n.o.v. on this ground.

*Judgment affirmed. Andrews, P. J., and Phipps, J., concur.*

DECIDED NOVEMBER 15, 2002.

*Allen E. Lockerman IV*, for appellants.

---

[15] (Citation and punctuation omitted.) Id. at 21 (2) (b).
[16] Id.
[17] 197 Ga. App. 164 (397 SE2d 720) (1990).
[18] Id. at 167 (2).
[19] Id. at 166 (2).
[20] Id. at 167 (2).
[21] Id.
[22] Id.

*Stack & Associates, Donald D. Stack, Jonathan L. Schwartz*, for appellees.